EUREKA LOG HOMES and United States Fidelity &
Guaranty Co. *v.* Corbit MANTONYA

CA 88-430                               772 S.W.2d 365

Court of Appeals of Arkansas
Division I
Opinion delivered June 21, 1989

*Davis, Cox & Wright*, by: *Kelly Carithers*, for appellant.

*Mashburn & Taylor*, by: *W.H.Taylor*; and *Jennifer Morris Horan*, for appellee.

DONALD L. CORBIN, Chief Judge. Stated explicitly, the issue in this case is whether the Arkansas Workers' Compensation Commission was correct in awarding appellee, Corbit Mantonya, interest on medical bills which accrued pending a final determination by this court as to which of three employers was liable for injuries sustained by appellee in October of 1983. We affirm the Commission's finding that the appellee is entitled to 10% interest on his medical benefits from August 17, 1984, until paid by appellants, Eureka Log Homes and United States Fidelity & Guaranty Company.

Appellee's chronological survey of the lengthy history of this case is helpful:

> 10/29/83: Appellee suffered a compensable work-related injury while in the employ of Don Cox Lumber Company, an uninsured subcontractor of appellant Eureka Log Homes. Thereafter, appellee filed a claim for workers' compensation benefits against both Don Cox Lumber Company and appellant Eureka Log Homes (designated respectively as Respondent No. 1 and Respondent No. 2 below).

> 4/25/84: The original hearing was conducted in this matter before Administrative Law Judge Tolley in order to determine appellee's entitlement to workers' compensation benefits. At this hearing, both Don Cox Lumber Company and appellant Eureka Log Homes took the position that Don Cox Lumber Company was an independent contractor for purposes of appellee's workers' compensation claim.

> 8/17/84: The original opinion was filed in this case, wherein the administrative law judge ruled that Don Cox Lumber Company was the subcontractor of appellant Eureka Log Homes, so that both were liable to appellee for the work-related injury he sustained. In particular, appellant Eureka Log Homes was directed to pay permanent partial disability benefits, reasonable and necessary medi-

cal expenses, attorney's fees, and costs of the proceedings. The administrative law judge specifically ruled that the award would "bear interest at the rate of ten (10%) percent from date until paid." The issue of claimant's entitlement to permanent partial disability benefits, having been reserved, was not ruled upon by the administrative law judge.

9/4/84: Appellant Eureka Log Homes filed its notice of appeal from the 8/17/84 administrative law judge's decision, stating as the grounds for said appeal.that appellant Eureka Log Homes was not liable to appellee on his workers' compensation claim.

10/2/85: The full Commission rendered its initial decision in this case, wherein the Commission found that Don Cox Lumber Company was an "independent contractor," so that appellant Eureka Log Homes was not liable to appellee for payment of the workers' compensation benefits in question.

10/23/85: Appellee filed his notice of appeal with the Arkansas Court of Appeals appealing from the above-referenced Commission ruling, stating as the grounds for said appeal the Commission's error in not finding appellant Eureka Log Homes to be a statutory prime contractor under Arkansas Statutes Annotated Section 81-1306 (1976) now codified at Arkansas Code Annotated Section 11-9-402 (Supp. 1987).

7/2/86: The Arkansas Court of Appeals in an unpublished opinion found appellant Eureka Log Homes to be a prime contractor within the meaning of Arkansas Statutes Annotated Section 81-1306, thereby reversing the full Commission's decision of 10/2/85. No mention was made of the prior interest award.

11/7/87: A hearing was held in this case before Administrative Law Judge Emerson to take up the issue of appellee's entitlement to permanent partial disability benefits (which issue had been preserved at the original 8/17/84 hearing), and to determine the end date of appellee's "healing period." At this hearing, appellee also requested

that the administrative law judge enforce the original ten (10%) percent interest award granted herein.

12/4/87: The administrative law judge's opinion was filed, wherein it was determined that claimant's "healing period," ended on January 17, 1985, and that claimant was entitled to permanent partial disability benefits in the amount of five (5%) percent to the body as a whole. The administrative law judge, however, refused to enforce the ten (10%) percent interest award for his stated reason that the 7/2/86 Court of Appeals decision had not specifically ordered the same.

1/8/88: Appellee filed his notice of appeal to the full Commission from the 12/4/87 administrative law judge's decision, on the grounds that he erred in finding that appellee was not entitled to interest on medical benefits as initially awarded by the original administrative law judge.

10/12/88: The full Commission filed its opinion in this case, wherein the 12/4/87 administrative law judge's opinion was reversed and appellee was determined entitled to receive ten (10%) percent interest on the stipulated $27,789.31 of medical expenses.

11/7/88: Appellants filed their notice of appeal from the 10/12/88 full Commission opinion with the Arkansas Court of Appeals alleging that the Commission erred in finding that appellee is entitled to the ten (10%) percent interest award. It is this appeal which is now pending before the Court of Appeals.

The Commission noted that the appellate history of this case has always dealt with the status of the employment relationship (independent contractor/uninsured subcontractor/prime contractor as statutory employer). The finding of compensability, with its resulting expenses (benefits/fee/interest), was never challenged. The Commission further observed that the controversy has always revolved around *who* has to pay, not *what* they will pay.

The majority of the Commission in its decision of October 10, 1988, opined that since the appellants did not challenge the award of interest in the first appeal to this court, the doctrine of

*res judicata* applied; thus, barring the appellants from now contesting the 10% interest award.

■ This court in its unpublished opinion in this matter dated July 2, 1986, finally determined who had to pay. We placed the liability on the appellants herein. Although we did not say specifically that appellants would be liable for the original award of interest on the medical bills granted by Administrative Law Judge Tolley, it was at least implicit that appellants would be totally liable for any benefits accruing and due appellee/claimant. We did state that appellant herein was "also liable for the [claimant's] claims for compensation benefits and medical expenses." We believe this language is broad enough to include an award of interest within the meaning of "compensation benefits." In effect, we reinstated Administrative Law Judge Tolley's decision of August 17, 1984. As we have noted earlier, there never has been a direct challenge as to what was to be paid until the appeal now before us.

Once we reversed the Commission as to the designation of who was liable, the case had to go back to the Commission for it to determine the appropriate dollar amount due the claimant. This would necessarily require a recalculation of interest because there would have to be a calculation of benefits in order to arrive at a total award. Every decision we make in workers' compensation cases necessarily requires that the case go back to the Commission for the entry of an order that is in keeping with our decision. On remand, the Commission referred the case to an administrative law judge for a hearing on issues that had been reserved at the original August 17, 1984, hearing to determine the end of appellee's healing period and his entitlement to permanent partial disability benefits.

■ In *Clemons* v. *Bearden Lumber Company*, 240 Ark. 571, 401 S.W.2d 16 (1966) our supreme court in construing Arkansas Statutes Annotated Section 81-1319(g) (1976) noted the task of filling certain omissions in the statute such as "When, for example, would interest begin to run if the claim were allowed by the referee, denied by the Commission, and allowed by the courts?" The supreme court held that interest upon accrued and unpaid installments of compensation is to be computed from the dates when they should have been paid, beginning, however, not

earlier than the date on which a referee or full Commission first enters an award allowing or denying a claim. The court explained:

> This rule has the merit of simplicity, fixing the rights of all concerned with certainty. It has the far more important merit of fairness, providing the claimant with some measure of redress for the fact that the payment of his just claim has been delayed, through no fault of his, for months or even, as in the case at bar, for years. Morever, [sic] this construction of the statute treats delinquent payments with the same justice that applies to advance payments, which must be discounted to their present value. § 81-1319(k).

*Id.* at 576, 401 S.W.2d at 19. *See also, Reynolds Metal Co.* v. *Brumley*, 226 Ark. 388, 290 S.W.2d 211 (1956).

Arkansas Code Annotated Section 11-9-809 (1987) provides that "compensation shall bear interest at the legal rate from the day an award is made by either an administrative law judge or the full Workers' Compensation Commission on all accrued and unpaid compensation." In turn, Arkansas Code Annotated Section 11-9-102(9) (1987) expressly states that " 'compensation' means the money allowance payable to the employee or to his dependents and includes the allowances provided for in § 11-9-509 . . . ."

Arkansas Code Annotated Section 11-9-509 (1987) is titled "Medical services and supplies — Amounts and time periods" and specifically addresses itself to the amounts payable and time periods allowable "for authorized medical, hospital, and other services and treatment furnished under §§ 11-9-508—11-9-516," which code provisions deal exclusively with medical services and supplies of the type involved in the case at bar.

■ Because Section 11-9-102(9) expressly and unequivocally includes those types of "allowances provided for in § 11-9-509," we agree with appellee that it cannot be seriously maintained that the interest award granted earlier by the administrative law judge did not encompass and directly apply to the stipulated $27,789.31 medical expense amount involved here.

■ Appellants' second issue involves the allegation that the Commission erred in finding that appellee is entitled to interest on

medical expenses paid directly to medical care providers by appellants. We fail to see any merit in appellants' argument that since the providers were paid directly, an award of interest to the appellee on this sum would allow claimant to recover a "windfall." We addressed this issue, at least obliquely, in our discussion of the *Clemmons* case. Appellants' argument in this regard is not persuasive. We have to agree with appellee's assessment that most medical benefits are paid directly to the medical providers. A review of many cases while not specifically stating that medicals were paid directly, brings us to the conclusion that interest is due on direct medical payments. In *Ragon v. Great American Indemnity Company*, 224 Ark. 387, 273 S.W.2d 524 (1954) an attorney sought to base his fee on the amount expended on medical services after successfully reversing the Commission's denial of benefits to his client. The court in referring to the complaint noted that the insurance company has paid out great sums for medical and hospital services and supplies which were within the peculiar knowledge and information of the carrier and unknown to plaintiff. *Ragon* turned on the legal ground that the attorney had not exhausted his administrative remedies by first applying to the Commission for redress. Very few seriously injured employees have the resources to pay for expensive medical care. We see the allowance of interest as being part and parcel of the benefits due an injured employee. It also should serve as a deterrent to frivolous appeals.

We find substantial evidence to support the Commission's determination that appellants owe appellee interest on the stipulated medical expenses of $27,789.31 beginning August 17, 1984, the date it should have been paid and the earliest date that an administrative law judge first entered the award.

Affirmed.

MAYFIELD and ROGERS, JJ., agree